# GETMAN, SWEENEY & DUNN, PLLC

Attorneys at Law
260 Fair Street
Kingston, N.Y. 12401
845-255-9370
fax 845-255-8649

April 2, 2025

The Honorable Cathy Seibel
United States District Court
Southern District of New York
The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

*Re: Holder et al. v. FedEx Ground Package System, Inc.* (Case No. 7:23 Civ. 7483-CS)

Dear Judge Seibel:

Getman, Sweeney, & Dunn PLLC ("GSD") represents Plaintiffs Dominick Diaz and Jordan Rodriguez in the above-captioned matter. We, together with counsel for Defendants MGS Ventures Inc, and G-Team Delivery Services Corp. ("MGS/G-Team") write jointly to request approval of the Settlement Agreement between the Named Plaintiffs and MGS/G-Team which resolves Plaintiffs' claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (FLSA) and the New York Labor Law (NYLL) and dismissal of the action in its entirety with prejudice. Court approval is appropriate, as the Settlement Agreement and Release ("the Agreement"), attached as Exhibit 1, constitutes a fair and reasonable compromise of a bona fide dispute.

## I.    Parties, Claims and Defenses

In their Second Amended Complaint (Dkt. 90) ("SAC"), Plaintiffs Dominick Diaz and Jordan Rodriguez assert claims against defendants Federal Express Corporation (FedEx)[1] and MGS/G-Team, jointly, for alleged overtime wage violations, spread of hours violations, and statutory violations, pursuant to the FLSA and NYLL §§ 191, 195, and applicable regulations, 12 NYCRR §§ 142 *et seq.*

Plaintiffs Diaz and Rodriguez are former delivery drivers for MGS and G-Team. Diaz was employed by MGS from October 12, 2020 through October 23, 2021, with a gap from approximately April 2021 through September 2021, and Plaintiff Rodriguez was employed by MGS from November 8, 2021 through December 19, 2021. Both Diaz and Rodriguez were employed by MGS/G-Team Inc.—independent service providers that contract to pick-up and deliver packages for FedEx. MGS and G-Team each separately contract with FedEx to provide package pickup and delivery services along various routes in the Newburgh, New York area.

---

[1] Success by merger to FedEx Ground Package System, Inc.

1

Diaz and Rodriguez allege that in addition to MGS/G-Team, FedEx was also their employer, that they drove a vehicle with a gross motor vehicle weight rating of less than 10,001 pounds[2], worked more than 40 hours a week, were not paid premium overtime wages under the FLSA and NYLL, and did not receive a wage notice upon hiring or accurate wage statements. (Dkt. 90, First, Second, Fourth, and Fifth, Causes of Action). In addition, Diaz claimed that some of his hours worked were not recorded, including work performed in the morning, before servicing his assigned delivery route, and work done after servicing his assigned delivery route. Plaintiffs sought unpaid wages as well as liquidated damages and statutory penalties. (Dkt. 90, pages 25-26). Plaintiffs also sought pre-judgment interest, costs and attorneys' fees. *Id*.

MGS/G-Team has not filed an Answer in this action, but denies Plaintiffs' factual allegations, claims, and damages. FedEx denied, and continues to deny, Plaintiffs' factual allegations and raised numerous affirmative defenses in their Answer. FedEx raised the defense that it did not employ Plaintiffs and thus Plaintiffs were not entitled to any recovery from FedEx. (Dkt. 97, pages 18-25).

## II.    Relevant History

This action was initially commenced on August 23, 2023 (*see* ECF No. 1), by two individuals who did not work (and had never worked) for MGS/G-Team, and both of whom are no longer parties to the action. Diaz and Rodriguez joined the action as named plaintiffs asserting claims against MGS/G-Team and FedEx on June 4, 2024 with the filing of the SAC. (Dkt. 90). MGS/G-Team were first named as defendants in the SAC. Prior to their joinder, MGS/G-Team had no involvement in the action. FedEx filed its Answer on June 18, 2024. (Dkt. 97). FedEx denied Plaintiffs' factual allegations and raised numerous affirmative defenses in their Answer. FedEx raised the defense that it did not employ Plaintiffs and thus Plaintiffs were not entitled to any recovery from FedEx. (Dkt. 97, pages 18-25).

Prior to expiration of its time to respond to the SAC, counsel for MGS/G-Team discovered arbitration agreements purportedly bearing the electronic signatures for Rodriguez and Diaz. On July 29, 2025, the parties jointly requested a temporary stay of MGS/G-Team's deadline to Answer the SAC to allow them time to confer and evaluate how they intended to proceed in light the arbitration agreements, and requesting a briefing schedule for Defendants' motions to compel arbitration, in the event the parties were unable to reach an agreement on arbitration. (Dkt. 108). Diaz subsequently agreed to litigate his claims in arbitration, and the Court stayed Diaz's claims pursuant to 9 U.S.C. § 3 on September 11, 2024. (Dkt. 114). After exchanging some information, on December 19, 2024, Defendants filed a joint motion to compel Rodriguez to arbitrate. (Dkt. 127). MGS/G-Team and Plaintiffs agreed to a settlement in principle before the deadline to respond to Defendants' motion. On March 4, 2025, the parties jointly requested that the Court adjourn Plaintiffs' opposition and Defendants' reply to the then-pending motion to compel arbitration sine die, allowing the parties to finalize all applicable documents associated with this settlement. (Dkt. 136). Your Honor granted that request (Dkt. 137), and subsequently denied Defendants' motion to compel arbitration without prejudice to renewal should the settlement not be consummated. (Dkt. 138).

---

[2] Diaz alleged that he drove vehicles of this size regularly, and Rodriguez alleges that he drove vehicles of this size during his first few weeks of employment.

III.    **The Agreement**

Pursuant to the Agreement, MGS/G-Team have agreed to pay $10,000 to Named Plaintiff Dominick Diaz, and $3,000 to Named Plaintiff Jordan Rodriguez in exchange for release of their wage and hour claims. *See* Agreement ¶ 2. In addition, MGS/G-Team have agreed to pay Plaintiffs' counsel $6,000 in fees and costs, for a total settlement of $19,000 ("the settlement sum"). *Id.* ¶2(e)-(f). This represents maximum recovery to the Named Plaintiffs. By entering into this agreement, Named Plaintiffs have agreed to release their claims against Defendants. *Id.* at ¶ 4.

## LEGAL ANALYSIS

Plaintiffs and MGS/G-Team seek the Court's approval of this negotiated settlement as fair and reasonable, as required by the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015). This settlement largely mirrors that of the settlement agreement approved by this Court for former Named Plaintiff Curtis Holder. *See e.g.* Dkt. 116-1.

I.    **The Proposed Settlement Is Fair and Reasonable to All Parties**

A.    **Settlement Amount**

The sufficiency of a FLSA settlement depends on the totality of circumstances, including but not limited to the following factors cited in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012):

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

1.    **Plaintiffs' Range of Possible Recovery**

Pursuant to the Agreement, Plaintiffs will receive $13,000 of the settlement sum—$10,000 to Diaz, and $3,000 to Rodriguez. Before attorneys' fees, costs, or pre-judgment interest, Plaintiffs' counsel estimates Plaintiffs' maximum potential recovery against Defendant for unpaid wages and liquidated damages under the FLSA and NYLL is approximately $12,168 combined. Plaintiffs' settlement amounts each reflect 100% of their back unpaid wages, and 79% and 100% of their liquidated damages respectively.

In contrast, FedEx asserts that Plaintiffs' maximum damages under the FLSA and NYLL are $0 because it claims it did not employ them, and MGS/G-Team contest that Plaintiffs are owed any amounts for unpaid time worked.

Plaintiffs could only collect the full recovery under the FLSA and NYLL against FedEx and MGS/G-Team if several factual and legal issues were resolved in their favor. In particular, Plaintiffs would have to prove that FedEx employed them to recover anything from FedEx, and the number of off-the-clock hours each of them worked if any. In addition, Defendants also would challenge Plaintiffs' entitlement to liquidated damages even if back wages were found to be owed.

Given the parties' factual disputes, the proposed settlement provides Plaintiffs with a substantial recovery, and it avoids the risk of protracted litigation. Plaintiffs' recovery is well within and above the typical range of recovery that represents a reasonable compromise of such claims. *See, e.g.*, *Flores v. Dynamic Wireless NYC LLC*, 21 Civ. 6160, 2022 WL 3363584, at *2 (S.D.N.Y. July 1, 2022) (plaintiff received nearly 50% of best-case recovery, not including liquidated damages or penalties); *Fraticelli v. MSG Holdings, L.P.*, 13 Civ. 6518, 2018 WL 5004867, at *2 (S.D.N.Y. Oct. 16, 2018) (plaintiffs received 48% and 37% of alleged individual damages); *Chowdhury v. Brioni America*, Inc., 16 Civ. 344, 2017 WL 5953171, at *2 (S.D.N.Y. Nov. 29, 2017) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable).[3] Moreover, the amount being paid to Plaintiffs represent a recovery of well over 100% of Plaintiffs' calculations of their actual overtime underpayments, before liquidated damages and penalties. *See Deran v. Antalia Turkish Cuisine LLC*, 19 Civ. 6833, 2020 WL 3414890, at *2 (S.D.N.Y. June 22, 2020) (approving as fair and reasonable FLSA settlement where plaintiff's recovery was 10% higher than his claim for actual unpaid wages and overtime).

Accordingly, the parties believe that a settlement of $13,000, exclusive of attorneys' fees and costs, is fair and reasonable.

### 2. Burdens and Expenses of Establishing Claims and Defenses, and Seriousness of Litigation Risk

The Parties face considerable risks in proceeding with this litigation. As set forth above, there are significant disputes that could affect the amount of the Plaintiffs' recovery. Even though both Plaintiffs are confident in the strength of their claims and are prepared to prove them, FedEx has asserted that it did not employ Plaintiffs and would vigorously litigate that issue. FedEx further believes that if the parties had to fully litigate the joint-employment issue, it would defeat Plaintiffs' claims entirely. Defendants have provided some time and pay data for Plaintiffs to calculate damages, but they dispute any off-the-clock work, and at any trial, Defendants would likely attempt to attack Plaintiffs' credibility concerning hours worked, which could affect Plaintiffs' overtime claims. Moreover, even if Plaintiffs establish back wage liability against any or all Defendants, the Court could also find that Defendants acted in good faith and thus decline to award any amount in liquidated damages.

Additionally, Defendant MGS/G-Team have asserted that Plaintiffs' claims must be arbitrated pursuant to agreements purportedly signed by Diaz and Rodriguez. Though Plaintiffs do not dispute that Plaintiff Diaz's claims are subject to arbitration, Plaintiff Rodriguez contests the arbitrability of his claims. Continued litigation would require significant resources.

Conversely, FedEx and MGS/G-Team are mindful that defeating Plaintiffs' claims may require protracted litigation at considerable cost, including extensive attorney time and/or arbitration fees. Accordingly, the Parties have entered into this Agreement with the shared goal of avoiding the considerable burdens, expenses and inherent risk of continuing with this litigation. In

---

[3] Courts in this district do not generally consider pre-judgment interest when assessing the fairness of this settlement. *See, e.g.*, *Ortiz v. My Belly's Playlist LLC*, 16 Civ. 2924, 2018 WL 1918611, at *3 (S.D.N.Y. Apr. 19, 2018) (assessing settlement exclusive of pre-judgment interest).

light of the Parties' good faith factual disputes and the attendant risk and costs of proceeding with this litigation, this factor favors approving the settlement.

### 3. Arm's-Length Bargaining and Possibility of Fraud or Collusion

"Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013). A settlement negotiated by experienced counsel and reached with the assistance of a third-party neutral is presumed fair. *Vasquez v. TGD Grp., Inc.*, 14 Civ. 7862, 2016 WL 3181150, at *3 (S.D.N.Y. June 3, 2016) (citing *Hernandez v. Anjost Corp.*, 11 Civ. 1531, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013)) (finding due process where parties engaged in arm's-length negotiations making "the possibility of fraud and collusion [] minimal").

The Agreement is the product of arm's-length negotiations between the parties' counsel. On behalf of Plaintiff Rodriguez, the Parties were prepared to move forward with litigation which would include responding to Defendants' motion to compel arbitration and related motions practice; extensive discovery; summary judgment motions, and potentially a jury trial. On behalf of Plaintiff Diaz, the Parties were prepared to arbitrate and had begun the process of reviewing and striking arbitrators through JAMs. Thus, this Agreement represents a realistic assessment that each Party's interests are best served by resolution.

Moreover, the parties to the Agreement are represented by counsel experienced in litigating wage and hour matters, and there is no evidence of overreaching by MGS/G-Team or any evidence of fraud or collusion. Both Plaintiffs actively participated in the litigation and settlement process.

Plaintiffs' attorneys have decades of experience litigating FLSA and other wage-and-hour cases. GSD concentrates its practice on FLSA and other wage-and-hour collective and class action litigation, all handled on a contingent basis. A summary of the qualifications of GSD's attorneys, paralegals, and data scientists is available at https://getmansweeney.com/our-team/. Currently, GSD is litigating wage-and-hour collective and class actions in federal courts in Florida, Iowa, Michigan, Mississippi, New York, Wisconsin, and Texas. GSD has litigated FLSA and other wage-and-hour collective and class actions on behalf of tens of thousands of workers across the country, including in Arizona, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Michigan, North Carolina, Ohio, South Carolina, Texas, Washington, Washington D.C., and West Virginia. GSD has served as class counsel in numerous wage and hour actions across the country, including in this district and Circuit. *See, e.g.*, *Roseman v. Bloomberg L.P.*, 1:14 Civ. 02657 (S.D.N.Y.) (approved as class counsel); *Kinkead v. Humana et al.*, 3:15 Civ. 01637 (D. Conn.) (same). Courts throughout the country and in this Circuit have recognized GSD's skill and experience in wage-and-hour litigation. *See, e.g.*, *Bloomberg L.P.*, 1:14 Civ. 02657 (S.D.N.Y. Oct. 15, 2018) ("The quality of representation for the class was excellent. It was a well litigated case and well-tried case at trial."); *Murphy, et al, v. Northern Dutchess Paramedics*, 7:11 Civ. 05661, ECF ¶ 15 (S.D.N.Y. Aug. 15, 2014) (Smith, M.J.) ("Class Counsel [Getman & Sweeney] has extensive experience in litigating wage and hour collective and class actions. Numerous courts have recognized Class Counsel's extensive experience in successfully litigating wage and hour cases."); *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 119 (E.D.N.Y. 2011) (finding Getman & Sweeney to have "stellar" qualifications as class counsel in wage-and-hour class litigation); *Lewis v. Alert Ambulette Serv. Corp.*, 11 Civ. 442, 2012 WL 170049, at *15 (E.D.N.Y. Jan. 19, 2012) ("[Getman & Sweeney]

has brought to bear its considerable experience in handling class actions, and other complex litigation, particularly claims of the type asserted in the present action").

In light of the Parties' extensive arms-length negotiations, paired with Plaintiffs' counsel considerable expertise, this Court should find there is no evidence of fraud or collusion associated with this Agreement.

## II. The Parties' Negotiated Non-Monetary Provisions Are Reasonable

In addition to Plaintiffs' monetary recovery, the Agreement contains the following non-monetary terms, all agreed upon following arms-length negotiations in good faith between the parties.

### A. Release of Wage and Hour Claims

Plaintiffs' narrowly tailored release of his wage and hour claims is fair and reasonable. *See* Agreement, ¶ 4. Limited releases do not raise fairness concerns under *Cheeks* and are routinely approved by courts in this District. *See Holder, et al., v. FedEx Ground Package System, Inc.*, 7:23 Civ. 7483, Dkt. 119 (S.D.N.Y. Oct. 20, 2024) (approving similar release); *Santos v. Yellowstone Properties, Inc.*, 15 Civ. 3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (limited release approved even where accompanied by separate, general release as to non-FLSA claims); *Martinez v. Gulluoglu LLC*, 15 Civ. 2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) (In contrast to narrow releases, "[c]ourts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'").

### B. Confidentiality

The Agreement does not impose confidentiality on the Plaintiffs. The only limitation is on the parties' counsel, which precludes counsel from publicizing the settlement to third parties. Agreement, ¶ 8. This limitation on publicity should not prevent the Court from approving the settlement. *See, e.g., Holder, et al., v. FedEx Ground Package System, Inc.*, 7:23 Civ. 7483, Dkt. 119 (S.D.N.Y. Oct. 20, 2024) (approving similar provision); *Choc v. Corp. #1*, 23 Civ. 3886 (GS), 2023 WL 8618746, at *5 (S.D.N.Y. Dec. 12, 2023) (analysis of limitations on publicity).

## III. Plaintiff's Attorneys' Fees Are Fair and Reasonable

Pursuant to ¶ 2 of the Agreement, Plaintiffs' counsel will receive a total of $6,000 in fees and costs. The fees and costs represent a significant discount in the amount of work Plaintiffs' counsel performed. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (noting that the lodestar method is a useful "cross-check" on the reasonableness of a requested percentage of fees). Plaintiff's counsel's hourly fee detail is reflected in the time detail records up through September 10, 2024, annexed as Exhibit 2.

The rates used in calculating Plaintiffs' Counsel's lodestar are reasonable and are consistent with rates used by courts in this district and approved in previous FLSA settlements. *See, e.g., Zorrilla v. Carlson Rests. Inc*., 14 Civ. 02740, Dkt. 514 ¶ 9 (S.D.N.Y. Apr. 9, 2018)

(approving rates for Outten & Golden LLP that were higher than GSD's 2018 rates); *Fleming v. NADAP, Inc.,* 23 Civ. 8892, 2024 WL 5056352, at *5 (S.D.N.Y. Dec. 9, 2024) (in a single-Plaintiff FLSA case, using a percentage-of-the-fund method, finding that Plaintiff's attorney's fee recovery of $3,000 representing a third of the Plaintiff's recovery to be reasonable); *Bevel v. Mennella's Poultry Co.,* 23 Civ. 5678, 2024 WL 1349010, at *3 (S.D.N.Y. Mar. 1, 2024), *report and recommendation adopted,* 1:23 Civ. 05678, 2024 WL 1346537 (S.D.N.Y. Mar. 29, 2024) (granting Plaintiffs' counsel's request for fees and awarding reasonable attorney's fees in the amount of $4,818.00, representing 33.3% of the single-Plaintiff's settlement amount). Further, GSD's rates have been repeatedly approved as part of lodestar crosschecks in class and collective actions. *See, e.g., Kinkead v. Humana, Inc., et al.*, 3:15 Civ. 1637, Dkt. 432 (D. Ct. Aug. 26, 2021) ("[H]aving conducted a 'cross-check' of Class Counsel's requested fee award using the lodestar method, the Court hereby concludes that Class Counsel's requested fee award of $5,666,666.67 is fair and reasonable and is therefore approved."). Here, Plaintiffs' Counsel's effective blended hourly rate is approximately $85, which is a significant departure from their standard rates.

In addition, the discounted hours expended are reasonable. Plaintiffs discounted counsel's fees by more than 80%. The hours exclude work performed by John DeGasperis, who was formerly with Basch & Keegan. It also excludes any work performed after March 28, 2025, including substantial work to effectuate the settlement. Here, Plaintiffs' Counsel achieved a substantial recovery for Plaintiffs.

For the foregoing reasons, the parties request that the Court approve the Agreement in this matter and "So Order" the parties' Stipulation And Order Of Dismissal With Prejudice submitted herewith.

Respectfully submitted,

/s/ *Matt Dunn*

**GETMAN, SWEENEY & DUNN, PLLC**
260 Fair Street
Kingston, New York 12401
Telephone: (845) 255-9370
Fax: (845) 255-8649
mdunn@getmansweeney.com

Attorneys for Plaintiff